**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PharMerica Mountain LLC, | No. CV-20-00493-TUC-RM |
| Plaintiff/Counter Defendant, | **ORDER** |
| v. | |
| Arizona Rehab Campus LLC, | |
| Defendant/Counter Plaintiff. | |

Pending before the Court are Plaintiff/Counter Defendant PharMerica Mountain LLC's ("Plaintiff" or "PharMerica") Motion for Partial Summary Judgment (Doc. 58)[1] and Defendant/Counter Plaintiff Arizona Rehab Campus LLC's ("Defendant" or "ARC") Motion for Partial Summary Judgment (Doc. 60).[2] The Motions are fully briefed. For the following reasons, PharMerica's Motion for Partial Summary Judgment will be granted and ARC's Motion for Partial Summary Judgment will be granted in part and denied in part.

**I.    Background**

Defendant ARC has operated a drug and alcohol rehabilitation facility in Tucson, Arizona since 2017. (Doc. 58.) The Arizona Department of Health Services has licensed

---

[1] The record citations herein refer to the docket and page numbers generated by the Court's electronic filing system.
[2] The Court finds the parties' Motions suitable for decision without oral argument.

the facility as a B6 Subacute Behavioral Health Inpatient Facility. (Doc. 60 at 3.) During the period at issue, Plaintiff PharMerica was the sole provider of pharmaceutical goods and services to ARC. (*Id.*) The parties entered into an agreement—the Pharmacy Services Agreement, or "PSA"—effective August 1, 2017, that gave PharMerica the exclusive right to supply ARC with the pharmaceuticals needed to treat ARC's clients. (Doc. 58 at 2.) The pharmaceutical medications that PharMerica provided mostly consisted of psychotropic medications used for detoxification and sobriety maintenance. (Doc. 60 at 3.) PharMerica provided ARC with medications that ARC ordered for the facility itself, known as "house drugs," as well as those that were prescribed to ARC's individual clients. (Doc. 58 at 3.)

A significant portion of ARC's clients are insured through the Arizona Heath Care Cost Containment System ("AHCCCS"), the Arizona state Medicaid benefit that provides health insurance to indigent Arizonans. (Doc. 73 at 2.) Third-party companies provide managed-Medicaid health insurance plans that are governed by Arizona Medicaid regulations. (*Id.*) Specifically, ARC contracts with Banner University Family Care ("Banner") to provide services to its AHCCCS-insured clients. (Doc. 60 at 4-5.) The agreement between AHCCCS and Banner provides for a negotiated payment (the "per diem" payment) to ARC for each day that an AHCCCS-insured client is admitted at ARC's facility. (*Id.*) Banner executes its pharmaceutical agreements through its pharmacy benefit manager, MedImpact, and PharMerica billed MedImpact for the prescriptions it provided ARC for ARC's AHCCCS-insured clients. (Doc. 60 at 5.) Banner refused to pay many of those claims. (*Id.*) A key dispute between the parties is whether, as a matter of law, the per diem payment covers pharmaceuticals. (*See* Docs. 60, 73, 78.) PharMerica contends that it does, and that therefore ARC is liable for the unpaid claims because ARC was already paid by Banner for the prescription drugs via the per diem payments. (*Id.*) ARC contends that, as a matter of law, the per diem payments did not cover pharmaceuticals and that therefore Banner or another third-party payor, and not ARC, is responsible for those claims. (*Id.*) The parties also dispute which laws or regulations should govern the enforcement of their contractual agreement. (*See* Docs. 58, 60, 73, 75.)

In this breach of contract action, PharMerica alleges that ARC owes it approximately $775,000 in outstanding payments, as well as approximately $83,000 for pharmacy goods and services that it acquired allegedly without intending to pay for them. (Doc. 1.) ARC filed a counterclaim for $60,000 plus interest thereon. (Doc. 6.) ARC alleges that the $60,000 in payments it made to PharMerica from January 10, 2020 to June 12, 2020 were unjustified because the PSA stated that PharMerica would be compensated by the client, a private insurance carrier, or AHCCCS, and thus PharMerica was unjustly enriched by ARC's payments. (*See id.*)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and to show (1) that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and (2) that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the Court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Pure questions of law, where there is no disputed issue of fact, are appropriate for summary judgment. *Schrader v. Idaho Dep't of Health & Welfare*, 768 F.2d 1107, 1110 (9th Cir. 1985). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. "[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* (internal citation omitted). In its analysis, the Court must accept the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The Court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. ARC's Motion for Partial Summary Judgment

#### a. Arguments

ARC moves for summary judgment on three issues: (1) liability for claims PharMerica submitted to Banner that Banner denied; (2) Plaintiff's fraud claim; and (3) Plaintiff's claim for punitive damages.

First, ARC moves for summary judgment on its liability for the denied claims that PharMerica submitted to Banner for the drugs it provided to ARC's AHCCCS-insured clients. (Doc. 60.) ARC argues that it is not financially responsible for Banner's denials of payment for these claims because the per diem payments ARC received from Banner did not cover the cost of pharmaceuticals. (*Id.* at 6-7.) ARC bases this argument on its interpretation of the PSA and what it contends are the applicable regulations. Specifically, ARC argues that finding that the per diem payments covered pharmaceuticals would grant PharMerica a windfall because it would have received payment twice—once from ARC and once from the third-party payors it billed—and that neither party intended such an

- 4 -

1 outcome when they agreed to the PSA. (Doc. 78 at 4-5.) ARC further argues that the
2 applicable regulations—namely, what it calls "AHCCCS Manual Regulation"—support its
3 position that the per diem payments from Banner did not cover pharmaceuticals. (*Id*. at 5-
4 6.) ARC further argues that PharMerica, not ARC, was responsible for appealing the denied
5 claims to Banner and that PharMerica's failure to do so should preclude it from suing ARC
6 for those claims. (Doc. 60 at 7-8.)

7 ARC also contends that Plaintiff's fraud claim, set forth in Count VI, and Plaintiff's
8 claim for punitive damages, both fail as a matter of law. (*Id*. at 8-10.) As to the fraud claim,
9 ARC contends that PharMerica has presented no evidence to support this claim. (*Id*. at 8-
10 9.) As to Plaintiff's claim for punitive damages, ARC contends that (1) the PSA explicitly
11 bars any liability for punitive damages and (2) the record does not contain any evidence of
12 egregious or outrageous conduct that could give rise to punitive damages. (*See id*. at 9-10.)

13 PharMerica makes several arguments in response. (Doc. 73.) First, PharMerica
14 argues that the AHCCCS Manual Regulation upon which ARC bases its argument (1) does
15 not have the controlling force of law because it is an AHCCCS agency guide, not a law or
16 regulation and (2) was not in effect during the time frame of the disputed claims and was
17 superseded by a new agency guide that omitted the language upon which ARC relies. (*Id*.
18 at 3.) PharMerica contends that Arizona Administrative Code R9-22-1205 is the
19 controlling state regulation in this matter and that it provides that per diem payments to
20 subacute behavioral health inpatient facilities, such as ARC, include pharmaceutical
21 medications. (*Id*. at 4-7.) More specifically, A.A.C. R9-22-1205 does not explicitly exclude
22 medications from coverage or indicate that they should be billed separately. (*Id*. at 5.)
23 PharMerica further argues that ARC could have challenged Banner's determination that its
24 per diem payments to ARC included pharmaceuticals but chose not to. (*Id*. at 8-9.)
25 PharMerica points to evidence showing that both Banner and AHCCCS believed that the
26 per diem payments covered pharmaceuticals, as well as evidence that ARC communicated
27 to Banner that it understood its responsibility to pay PharMerica for pharmaceuticals. (Doc.
28 74-4 at 7-8; Doc. 74-7 at 1.) PharMerica agrees to dismissal of the fraud claim raised in

1 Count VI and does not respond to Defendant's arguments regarding punitive damages. (Doc. 73 at 10-11.)

### b. Law

#### i. The PSA

In Arizona, in the absence of an explicit choice of law by the parties, the contractual rights and duties of the parties are governed by the law of the state having "the most significant relationship to the parties and the transaction." *Ervco, Inc. v. Texaco Ref. & Mktg., Inc.*, 422 F. Supp. 2d 1084, 1087 (D. Ariz. 2006) (internal citation omitted). Accordingly, as the PSA does not include a choice of law provision, Arizona law applies to this dispute. Under Arizona law, "[w]hen parties bind themselves to a lawful contract, a court must give effect to that contract as written if the terms are clear and unambiguous." *BMW of N. Am., LLC v. Mini Works, LLC*, 166 F. Supp. 3d 976, 982 (D. Ariz. 2010) (internal citation omitted). "The intent of the parties, as ascertained by the language used, must control the interpretation of the contract. It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement. Its duty is confined to the construction or interpretation of the one which the parties have made for themselves." *Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332, 1334 (Ariz. 1977) (internal citation omitted).

Under Arizona law, "a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract." *Ervco, Inc.*, 422 F. Supp. 2d at 1087. "The principle of Expressio unius est exclusio alterius as used in statutory and administrative rule construction means that the expression of one or more items of a class and the exclusion of other items of the same class implies the legislative intent to exclude those items not so included." *Sw. Iron & Steel Indus., Inc. v. State*, 597 P.2d 981, 982 (Ariz. 1979) (internal citation omitted).

Neither party argues that the terms or provisions of the PSA are ambiguous or inapplicable. The PSA provides that PharMerica would submit monthly statements to ARC for its services, and that ARC would pay those statements within 60 days. (Doc. 58 at 10.)

The PSA further provides that if ARC disputed its liability for a charge on a statement, it had to provide PharMerica with specific information regarding the dispute within 60 days, and if it did not do so, the statement was deemed correct. (*Id.*) Specifically, the PSA provides as follows:

> (e)   If Client disputes any amount on a statement, Client must by the due date for the applicable statement (i) provide the information described in Section 5.(e)(1) to Pharmacy for each disputed charge before the payment due date, and (ii) pay all charges on the statement by the payment due date.
> [. . .]
> If Client does not provide Pharmacy with written notice that it disputes an amount due on a statement in accordance with the procedure set out in this section, the statement shall be deemed to be correct and Client shall pay Pharmacy the entire amount due on the statement (plus interest if applicable).
>    (1)   All Disputed Charges shall be submitted by Client using the Resolution Center available on ViewMasteRx or via email to an email address to be provided by Pharmacy with "Home's Name" in the subject line. Disputed Charges shall include the following information: Pharmacy Name; Home Name; Payer; Resident Name; Rx in dispute; Reason; Dates of Services; Credit amount requested; Comments.

(Doc. 58 at 10-11; *see also* Doc. 59-2.)

### ii.   AHCCCS Regulations and Guidance

The Arizona Administrative Code ("A.A.C.") codifies the "Scope and Coverage of Behavioral Health Services" for Arizona's state Medicaid benefit at A.A.C. R9-22-1205. Regarding the services that are and are not covered by a per diem payment administered by AHCCCS to a subacute behavioral health inpatient facility, it provides:

> C.   Covered Inpatient sub-acute agency services. Services provided in [an] inpatient sub-acute facility as defined in 9 A.A.C. 10, Article 1 are covered subject to the limitations and exclusions under this Article.
>    1.   Inpatient sub-acute facility services are not covered unless provided under the direction of a licensed physician in a licensed inpatient sub-acute facility that is accredited by an AHCCCS-approved accrediting body.
>    2.   Covered Inpatient sub-acute facility services include room and board and treatment services for behavioral health and substance abuse conditions.
>    3.   Services are reimbursed on a per diem basis. The per diem rate includes all services, except the following

        licensed or certified providers may bill independently for services:
- a. A licensed psychiatrist,
- b. A certified psychiatric nurse practitioner,
- c. A licensed physician assistant,
- d. A licensed psychologist,
- e. A licensed clinical social worker,
- f. A licensed marriage and family therapist,
- g. A licensed professional counselor,
- h. A licensed independent substance abuse counselor, and
- i. A medical practitioner.

4. The following may be billed independently if prescribed by a provider specified in this Section who is operating within the scope of practice:
- a. Laboratory services, and
- b. Radiology services.

A.A.C. R9-22-1205, Section C.

The regulation further provides:

    H. Other covered behavioral health services. Other covered behavioral health services include:
1. Case management as defined in 9 A.A.C. 10, Article 1;
2. Laboratory and radiology services for behavioral health diagnosis and medication management;
3. *Medication*;
4. Monitoring, administration, and adjustment for psychotropic medication and related medications;
5. Respite care as described within subsection (J);
6. Behavioral health therapeutic home care services provided by a RBHA in a professional foster home defined in 6 A.A.C. 5, Article 58 or in an adult behavioral health therapeutic home as defined in 9 A.A.C. 10, Article 1;
8.[3] Other support services to maintain or increase the member's self-sufficiency and ability to live outside an institution.

---

[3] The regulation does not include a provision numbered 7.

A.A.C. R9-22-1205, Section H (emphasis added).

The AHCCCS Behavioral Health Services Guide, which Defendant refers to as "AHCCCS Manual Regulation," states that the per diem payment to subacute facilities does not cover pharmaceutical medications and medications should be billed separately. (Doc. 61-1 at 39.) The parties agree that this Guide was retired in 2018, prior to nearly all the claims in dispute, and replaced by the AHCCCS Medical Policy Manuals and Provider Billing Manuals, which provide that medical services, including medication and medication management, are covered. (*See* Doc. 74-2 at 1; Doc. 74-3 at 7.)

### c. Analysis

The sole authority upon which ARC relies to support its argument that the per diem rate did not include pharmaceuticals and therefore that ARC is not liable to PharMerica for the claims denied by Banner is the 2017 version of the AHCCCS Behavioral Health Services Guide. That Guide is not controlling law and does not control the interpretation of the parties' contract. Rather, the applicable regulation, A.A.C. R9-22-1205, controls the interpretation of whether the per diem payments from Banner to ARC included pharmaceutical medications. A.A.C. R9-22-1205 indicates that per diem payments do cover medications; thus, the Court finds that the per diem payments from Banner to ARC covered pharmaceutical medications. Because the per diem payments cover pharmaceuticals, ARC's argument that it should be granted summary judgment as to the denied claims that PharMerica submitted to Banner for the drugs PharMerica provided to ARC's AHCCCS-insured clients fails as a matter of law.

As to ARC's arguments regarding Count VI and punitive damages, the Court will grant summary judgment in favor of ARC. PharMerica agrees to dismiss Count VI and does not refute ARC's contentions regarding the impropriety of punitive damages in this case. The Court finds that (1) the PSA explicitly precludes liability for punitive damages (*see* Doc. 60 at 9) and (2) there is no evidence of outrageous or egregious conduct on the part of ARC that could support a claim for punitive damages. Accordingly, the Court will

grant summary judgment in favor of ARC as to Count VI and the claim for punitive damages.

### IV. PharMerica's Motion for Partial Summary Judgment

#### a. Arguments

PharMerica moves for summary judgment on two issues. (Doc. 58.) First, PharMerica seeks summary judgment as to Count 1 of its Complaint, which alleges that ARC breached the PSA by failing to pay PharMerica the sums it owed for the pharmacy goods and services PharMerica provided. (Doc. 1 at 12-13; Doc. 58 at 2, 9-14.) PharMerica alleges that ARC owes it the total amount of $877,395.26, comprised of $667,700.42 in principal and $209,694.84 in contractual interest, plus $378.45 in contractual interest accruing per day between December 2, 2021 and the date of judgment. (Doc. 58 at 2.) In support of its position that ARC owes it an undisputed total of $877,395.26, PharMerica provides evidence including invoices, records of internal communications and communications with Banner representatives regarding ARC's nonpayment, records of communications documenting the parties' and Banner's understanding that the per diem payments covered pharmaceuticals, and multiple demand letters for payment. (Doc. 59.) PharMerica concedes that there may be a genuine dispute of material fact as to an additional $112,102.28 of the principal balance it is owed and reserves its right to prove that portion of its breach of contract damages at trial. (*Id.*)

PharMerica also moves for summary judgment on ARC's counterclaim for $60,000. (Doc. 58 at 2.) PharMerica reserves Counts II-VI[4] of its Complaint to be proven at trial. (*Id.*)

In support of its argument that it is entitled to summary judgment on Count I and the associated damages, PharMerica argues first that ARC failed to follow the procedures set forth in the PSA for contesting the charges it received from PharMerica for pharmaceuticals PharMerica provided. (Doc. 58 at 9-12.) Because ARC did not properly follow the procedure for contesting charges, including providing PharMerica with specific

---

[4] As discussed supra in Section III(c), Count VI will be dismissed.

information regarding the disputed charges within 60 days of the statement date, PharMerica argues that ARC deemed those charges correct pursuant to the PSA's explicit provisions. (*Id*. at 10-11.) PharMerica concedes that ARC timely disputed charges for four statements, for the amount of $9,950.58, and that PharMerica provided partial credit to ARC for those disputed charges. (*Id*. at 11.) PharMerica further states that ARC submitted untimely written disputes for four other statements, for which ARC received no credit, since the disputes were submitted outside of the contractual 60-day period. (*Id*.) Apart from those statements, PharMerica contends that ARC did not dispute any of the other 32 statements PharMerica issued, that ARC did not pay those statements, and thus that PharMerica is entitled to summary judgment on the amounts in those statements.

PharMerica further argues that there is no genuine dispute of material fact that ARC was responsible for paying for the pharmaceuticals it obtained pursuant to the per diem payments from third parties. (*Id*. at 13.) PharMerica contends that the per diem payments covered pharmaceuticals and that this conclusion is supported by ARC's contracts with other third-party providers, including United Health Care ("UHC") and Blue Cross Blue Shield of Arizona ("BCBS"). (*Id*. at 4-6, 13-14.) Like Banner, UHC and BCBS paid ARC an all-inclusive per diem rate on behalf of members of their insurance networks who were admitted to ARC's facility. (*Id*. at 4-6.) Because ARC's contracts with UHC and BCBS explicitly provide that per diem payments cover medications, and because Banner stated in email communications that its per diem payments to ARC included medications,[5] PharMerica contends that there is no genuine dispute of material fact that the per diem payments included medications. (*Id*. at 5-7, 13-14.)

---

[5] Danielle Carnes Kacer, Provider Relations Representative at Banner, wrote to ARC on August 4, 2020: "Yes, pharmacy costs are included in the per diem. We believe this is supported by AHCCCS policies (see, e.g., A.A.C. R9-22-1205(C), as well as our contract with Arizona Rehab Campus." (Doc. 59-29.)

Ryan Thomsen, Medicaid Administrative Director at Banner, wrote to ARC on September 3, 2020: "We continue to believe we are paying your claims appropriately. We previously shared our perspective that the billed revenue codes are paid at an all-inclusive per diem rate for the members in your detox facility and we have cited Arizona Administrative Code as support for that position." (Doc. 59-30.)

In support of its argument that it is entitled to summary judgment on ARC's counterclaim for $60,000, PharMerica argues that the counterclaim is based on the premise that ARC paid PharMerica more than was required under the parties' contract—an assertion that PharMerica contends is unsupported by the evidence. (*Id*. at 15.) PharMerica contends that the evidence shows that ARC underpaid its obligations to PharMerica by hundreds of thousands of dollars and failed to meet its contractual obligations with PharMerica and with third-party payors, not the other way around. (*Id*.)

In response, ARC contests the admissibility of the emails from Banner representatives stating Banner's understanding that the per diem payments included medications. (Doc. 75 at 3.) ARC contends that the email communications cannot be relied upon for the proposition that the per diem payments included medications because the authors of the emails have not been deposed or cross-examined, and therefore the emails cannot be considered for the truth of their contents at summary judgment. (*Id*.) ARC further argues that PharMerica should have appealed the denied claims to Banner instead of filing this lawsuit. (Doc. 75 at 3-4; *see also* Docs. 59-29, 59-30.)

Next, ARC raises a number of arguments alleging that PharMerica mishandled the billing dispute prior to this lawsuit, including that (1) ARC raised concerns about the "abnormally high amounts of the invoices" and that PharMerica led ARC to believe these concerns had been resolved when they had not; (2) "billing errors" were due to PharMerica's unfamiliarity with industry billing practices; (3) PharMerica miscategorized ARC as a long-term care or skilled nursing facility; and (4) PharMerica "frequently changed" the amount it claimed ARC owed. (Doc. 75 at 5-6.) ARC further contends that it complied with the PSA in providing complete patient billing information and that it continually made good-faith efforts to work with PharMerica to resolve billing issues according to the PSA. (*Id*. at 6-7.) ARC contends that "it was provided with no definitive, binding authority that would require it to pay PharMerica hundreds of thousands of dollars to provide drugs to its insured clients." (*Id*. at 8.) ARC argues in response to PharMerica's arguments regarding its counterclaim that PharMerica has not identified any provision of

the PSA that would require ARC to pay PharMerica or else risk losing delivery of pharmaceuticals as provided under the agreement. (*Id.* at 7.)[6]

In reply, PharMerica contends that ARC failed to comply with the provision of the PSA requiring ARC to provide "written notice that it disputes an amount due on a statement," and that, according to the PSA, the amount will therefore "be deemed correct and [ARC] shall pay [PharMerica] the entire amount due." (Doc. 77 at 1-2.) PharMerica accordingly contends that ARC has raised no genuine dispute of material fact that would preclude PharMerica from being granted summary judgment. (*Id.*) PharMerica further contends that ARC has failed to provide any evidence contradicting the material facts that ARC failed to properly dispute all but four billing statements, failed to provide timely written notice of disputes pursuant to the PSA, and failed to pay the undisputed amounts. (*Id.* at 2-3.) PharMerica also contends that ARC's arguments do not raise genuine issues of disputed material facts but rather rely on immaterial facts that should not affect a summary judgment ruling. (*Id.* at 2-5, 8.)

**b. Law and Analysis**

As discussed *supra* in Section 3(b)(ii), the Court has determined as a matter of law that the per diem payments covered pharmaceuticals and will not re-visit that issue in considering ARC's Motion for Summary Judgment.[7]

ARC has not cited any authority, and the Court is not aware of any, precluding PharMerica from filing this lawsuit before appealing Banner's denials of its claims to state

---

[6] This argument ignores the facts, for which PharMerica provides evidentiary support, that in early 2020, the parties agreed to an arrangement designed to help ARC catch up on its late payments of over $600,000. Pursuant to that arrangement, ARC was to overnight PharMerica $10,000 per week and PharMerica would not terminate provision of pharmaceuticals, as it was contractually entitled to do. (Doc. 59 ¶¶ 15, 62, 64-65; Doc. 59-1 ¶ 42-46; Doc. 59-17.) PharMerica thereafter terminated the PSA and ceased delivering pharmaceuticals due to ARC's non-payment. (Doc. 59 ¶¶ 86-87.)

[7] Because the Court has already determined as a matter of law that the per diem payments covered pharmaceuticals, it need not consider the emails from Banner representatives as evidence on that issue. However, the Court notes that there is no dispute that the contents of the emails support PharMerica's position that the per diem payments covered pharmaceuticals. Furthermore, Defendant's argument that the emails should be excluded fails, as evidence may be considered at the summary judgment stage if it could be presented in an admissible form at trial, *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003), and the contents of the emails could be presented in an admissible form via witness testimony or to refresh a witness's recollection.

authorities and ultimately to AHCCCS. Thus, ARC's argument that summary judgment should be denied to PharMerica because PharMerica should have or was obligated to appeal its denied claims before filing this lawsuit fails.

ARC's remaining arguments also fail to raise material questions of fact that would preclude summary judgment for PharMerica. ARC does not argue that it timely and properly contested, according to the PSA's terms, the bills that it now disputes. ARC's arguments center on the notion that PharMerica mishandled the billing disputes prior to this lawsuit, but ARC cites to no legal authority and points to no evidence that would undermine or contradict PharMerica's position that ARC is responsible for the unpaid bills pursuant to the PSA's terms. ARC has failed to show that a genuine dispute of material fact exists that would preclude PharMerica from obtaining summary judgment on the amount it seeks in connection with Count I.

Accordingly, the Court will grant summary judgment to PharMerica on Count I and will order ARC to pay PharMerica the total amount of $877,395.26. It will also grant summary judgment to PharMerica on ARC's counterclaim for $60,000, as ARC does not present any evidence or argument that a genuine dispute of material fact exists regarding that claim.

## V.     Conclusion

For the foregoing reasons, the parties' Partial Motions for Summary Judgment are resolved as follows:

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 60) is **granted in part and denied in part**, as follows:

(1) The Motion is **denied** as to the AHCCCS claims.

(2) The Motion is **granted** as to Count VI. Count VI is **dismissed with prejudice**.

(3) The Motion is **granted** as to punitive damages. Plaintiff's claim for punitive damages is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 58) is **granted as follows:**

(1) Partial summary judgment on Count I is granted in favor of Plaintiff. Defendant is liable to Plaintiff for the total amount of **$877,395.26**, comprised of $667,700.42 in principal and $209,694.84 in contractual interest, plus $378.45 in contractual interest accruing after December 2, 2021.

(2) Defendant's counterclaim for $60,000 is **dismissed with prejudice**.

(3) Plaintiff's claims in Counts II–V are reserved for trial. Plaintiff's claim to the additional $112,102.28 of the principal balance it contends it is owed is also reserved for trial.

Dated this 8th day of August, 2022.

_____
Honorable Rosemary Márquez
United States District Judge